UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ASHLEY E. RUDOLPH, | No. 2:23-cv-02765 CKD |
|---|---|
| Plaintiff, | |
| v. | ORDER AND |
| MARTIN O'MALLEY, Commissioner of Social Security, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding that her disability ended on November 1, 2016 under section 223(f) of the Social Security Act ("Act"). The parties have filed cross-motions for summary judgment. ECF Nos. 7, 9 & 11. For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born in 1977, applied for a period of disability and disability insurance benefits on January 4, 2012. Administrative Transcript ("AT") 1074, 1166. On November 25, 2013, plaintiff was found disabled for a period beginning on May 28, 2011 and ending November 1, 2016. AT 1166. The decision finding plaintiff disabled found that she had lumbar degenerative

1

disease post-spinal surgery.  AT 13, 1064.

On May 18, 2019, pursuant to a continuing disability review ("CDR"), an ALJ found that plaintiff was no longer disabled as of November 1, 2016.[1]  AT 11-21.  Plaintiff appealed the decision, and on August 3, 2022, the U.S. District Court for the Eastern District of California remanded the case for further administrative proceedings.  AT 1062, 1185.  After a telephonic hearing on May 5, 2023 (AT 1095-1131), a second ALJ decision issued on September 15, 2023, also concluding that plaintiff was no longer disabled as of November 1, 2016.  AT 1062-1075.  Plaintiff challenges the 2023 decision in the instant case.

In it, the ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The most recent favorable medical decision finding that the claimant was disabled is the determination dated November 25, 2013.  This is known as the 'comparison point decision' or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: lumbar degenerative disc disease status post laminectomy.  This impairment was found to result in the residual functional capacity to perform sedentary work except the claimant was required a sit/stand option one or two times per hour at the workstation.  She required one or two 15-minute breaks per hour and she would miss work two days per month.
>
> 3. The claimant has not engaged in substantial gainful activity since November 1, 2016.
>
> 4. The medical evidence establishes that the claimant did not develop any additional severe impairments after the CPD through the date of this decision.  Thus, the claimant continued to have the same impairment that she had at the time of the CPD, degenerative disc disease.
>
> 5. Since November 1, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 6. Medical improvement occurred on November 1, 2016.
>
> 7. After careful consideration of the entire record, I find that, since November 1, 2016, the claimant has had the residual functional capacity to perform sedentary work.  Specifically, she can lift 10 pounds occasionally and 5 pounds frequently.  She can stand/walk 2

---

[1] "The Commissioner of the SSA must conduct periodic continuing disability reviews of persons who receive disability benefits."  Lambert v. Saul, 980 F.3d 1266, 1268 (9th Cir. 2020), citing 42 U.S.C. § 421(i); 20 C.F.R. § 404.1590.

  hours total and sit 8 hours total in an 8-hour workday.  She must be allowed to sit or stand at the workstation while remaining on task.  She cannot climb ladders, ropes, or scaffolds.  She can frequently, not constantly, balance.  She can occasionally stoop, kneel, crouch, crawl, and climb stairs.

  8.  The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity.

  9.  The claimant has no past relevant work.

  10. On November 1, 2016, the claimant was a younger individual 18-44.

  11.  The claimant has at least a high-school education.

  12.  Transferability of job skills is not an issue because the claimant does not have past relevant work.

  13.   Since November 1, 2016, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to form a significant number of jobs in the national economy.

  14.  The claimant's disability ended on November 1, 2016, and the claimant has not become disabled again since that date.

AT 1064-1075.

ISSUES PRESENTED

  Plaintiff contends that the ALJ committed the following errors: (1) the ALJ failed to address the burden of proof for termination of disability benefits; (2) the ALJ used the wrong standard to evaluate the medical opinion evidence; (3) the ALJ failed to address plaintiff's mental limitations as required; and (4) the ALJ did not provide sufficient reason to discount plaintiff's subjective symptom testimony.

LEGAL STANDARDS

  The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

1 rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

2   The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Burden of Proof

Plaintiff asserts that she did not receive due process in her continuing disability review. She argues that the ALJ committed legal error "by not providing a point-by-point comparison citing specific medical evidence to meet his burden of proof." ECF No. 7 at 10. Defendant counters that the ALJ applied the correct legal standards, including his burden of proof. ECF No. 9 at 4-6; see Burns v. Kijakazi, 2023 WL 2598847, at *2 (D. Montana Mar. 22, 2023) (discussing burden of proof in continuing disability review).

The SSA may terminate disability benefits upon finding that the claimant's condition has medically improved, and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). "To determine whether there has been medical improvement, an administrative law judge (ALJ) must compare the current medical severity of the claimant's impairments to the medical severity of the impairment at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled." Attmore v. Colvin, 827 F.3d 872, 873 (9th Cir. 2016) (quotations omitted); see also 20 C.F.R. § 416.994(b). Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1). There is no presumption

4

of continuing disability; that is, "a disability determination must be made 'on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.'" Lambert v. Saul, 980 F.3d 1266, 1276 (9th Cir. 2020); see Vargas v. Kijakazi, No. 2:20-cv-01570-JDP (SS), 2023 WL 2655811, *1 (E.D. Cal. Mar. 27, 2023) (legal standard).

The decision to terminate benefits under Section 223(f) of the Social Security Act involves an eight-step sequential evaluation process. 20 C.F.R. §§ 416.994(b)(5)(i)-(viii). Here, "the ALJ's analysis covered all eight steps of the evaluation process." See Held v. Colvin, 82 F. Supp. 3d 1033, 1037 (N.D. Cal. Mar. 2, 2015); AT 1063-1064. Moreover, the ALJ's decision provided sufficient reasoning to allow the court to perform its own review. See Lambert, 980 F.3d at 1277 ("ALJ must provide sufficient reasoning that allows us to perform our own review").

While plaintiff points out that the ALJ did not correct a "clerical error" in the file with respect to substantial gainful work activity, the clerical error was not factored into the ALJ's ultimate finding that plaintiff did not engage in SGA during the period at issue. See ECF No. 1065. Plaintiff has not shown that her due process rights were violated or that the ALJ erred with respect to the burden of proof.

B. Medical Opinion Evidence

Plaintiff next argues that the ALJ used the wrong legal standard to evaluate the medical opinions, giving "substantial weight" to the state agency medical consultants' opinions that plaintiff could perform "some types of light exertional work" as of November 1, 2016.[2] See AT 1073, citing AT 158-160, 993-1000, 1017-1022.

The ALJ gave state agency physicians Dr. Acinas' and Dr. Samplay's opinions great weight in part "because the consultants are familiar with Social Security Rules," which plaintiff contends was an erroneous reason to credit them. However, the ALJ also cited other reasons, i.e.,

---

[2] Plaintiff's position seems to be that the ALJ should have assigned more weight to the opinions of primary care physician Dr. Arai (discussed in the ALJ's decision at AT 1070) and/or neurologist Dr. McKnight, who evaluated plaintiff in February 2016 and documented his findings in a report. AT 1580-1582. However, plaintiff does not point to any medical opinions by these doctors within the meaning of § 404.1527(a)(1).

5

1  that "their assessments are consistent with the claimant's functioning, the treatment she has
2  sought, and with the objective findings." AT 1068; see 1072-1073. The ALJ also partially
3  credited the opinion of consultative examiner Dr. Ali, who performed a comprehensive internal
4  medical exam in July 2023 and concluded that plaintiff could perform a range of light work. AT
5  1073, citing AT 1704-1708. The ALJ explained his reasons for discounting portions of Dr. Ali's
6  opinion (i.e., plaintiff's use of cane at the July 2023 exam was due to a recent fracture and not
7  expected to last 12 months), and overall found the medical opinions to support "a range of
8  sedentary exertional work with a sit/stand option." AT 1073.
9       Defendant argues that plaintiff's argument is foreclosed by the law of the case doctrine
10 because, in its 2022 decision remanding this case for further administrative proceedings, the
11 federal court affirmed the first ALJ's findings with respect to the medical opinions.
12 Alternatively, defendant argues that the ALJ did not err in weighing the medical opinion
13 evidence.
14      "The law of the case doctrine generally prohibits a court from considering an issue that
15 has already been decided by that same court or a higher court in the same case." Stacey v.
16 Colvin, 825 F.3d 563, 567 (9th Cir. 2016). The doctrine, which applies in the Social Security
17 context, "is concerned primarily with efficiency, and should not be applied when the evidence on
18 remand is substantially different, when the controlling law has changed, or when applying the
19 doctrine would be unjust." Id. (citation omitted); see, e.g., Hammond v. Berryhill, 688 Fed.
20 Appx. 486, 488 (9th Cir. 2017) (district court correctly barred Social Security plaintiff from
21 reasserting an argument that court had expressly rejected in earlier appeal).
22      In the earlier federal case in this action, Rudolph v. Comm'r, No. 2:20-cv-0922-DMC,
23 2022 WL 30383726, at *6 (E.D. Cal. Aug. 3, 2022), the court found that "the ALJ properly relied
24 on the opinions from the agency consultative doctors [Dr. Acinas and Dr. Samplay], which
25 constitutes substantial evidence." The court remanded the case "to allow the Commissioner to re-
26 evaluate Plaintiff's statements and testimony" (id. at *11) and to "address[] the deficiencies"
27 outlined in its decision (id. at *14), not to re-evaluate the medical evidence. Thus, it appears that
28 plaintiff's argument about crediting the agency medical opinions is foreclosed by the law of the

1  case.

2  Even if not, however, plaintiff's claim fails. The ALJ cited several standard factors in his

3  decision to credit the agency opinions and part of Dr. Ali's opinion, then limited plaintiff to

4  sedentary work with a sit/stand option "in light of the longitudinal treatment record and [the

5  claimant's] subjective complaints."[3]  AT 1073.  Notably, the RFC was more limited than all three

6  credited doctors opined.  Plaintiff has not shown harmful error on this basis.

   C. Mental Limitations

8  Plaintiff asserts that "the record does not support" the ALJ's findings of mild mental

9  limitations.[4]  ECF No. 7 at 15.  Defendant claims substantial evidence supports the mental RFC.

10  When a claimant has presented a "colorable claim" of mental impairment, the ALJ is

11  required "to follow a special psychiatric review technique." Keyser v. Comm'r Soc. Sec. Admin.,

12  648 F.3d 721, 725-26 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a).  In performing the technique, the

13  ALJ rates the degree of functional limitation for four functional areas and determines whether the

14  impairment is severe.  Keyser, 648 F.3d at 725; 20 C.F.R. § 404.1520a.

15  In this case, the ALJ rated plaintiff's mental impairments in four areas of functioning

16  known as the "paragraph B" criteria: understanding and applying information; interacting with

17  others; concentrating, persisting, and maintain pace; and adapting or managing oneself.  20 C.F.R.

18  Part 404, Subpart P, Appendix 1 §§ 12.04(B), 12.06(B), 12.15(B).  The ALJ found plaintiff to

19  have mild limitation in all four areas, and, "[c]onsistent with such a finding, . . . no functional

20  limitations resulting from mental impairment at the remaining steps of the analysis." AT 1067.

21  In support of these conclusions, the ALJ relied on the opinions of two state agency

---

[3] Plaintiff also briefly argues that the ALJ erroneously discounted the June 2023 psychological evaluation by Dr. Bowerman and Dr. Ogbeide. See AT 1066, citing AT 1693-1702. The court addresses this issue in relation to the next claim, concerning mental limitations.

[4] At step three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir.1999). A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing. Tackett, 180 F.3d at 1099.  Insofar as plaintiff's position is that she met or equaled a listed mental impairment, she has not shown that she satisfied all the criteria, so any such argument fails.

psychiatric consultants, Dr. Ying and Dr. Lucila, both of whom "found no evidence of any severe medically determinable mental impairment." AT 1066. The ALJ explained that these opinions were "given great weight because they are consistent with the few, if any, reported mental health symptoms and the absence of mental health diagnosis or treatment in the medical records" during the period of November 1, 2016 through the decision date of September 15, 2023. AT 1066. The ALJ also cited plaintiff's normal mental status exam findings, normal daily activities and behaviors, and documented high average intellect and average memory, among other factors. AT 1067.

The ALJ noted the June 2023 consultative evaluation by Dr. Sara Bowerman and Dr. Ogbeide, who diagnosed plaintiff with depression, anxiety, ADHD, and PTSD, and found her moderately to markedly impaired in multiple functional areas. AT 1066, citing AT 1693-1702. He discounted this opinion "because all of these diagnosed conditions are untreated. . . . The opinions are not supported by other opinions in the record and they are not supported by their own examination findings." AT 1066-67.

Though plaintiff seeks to reweigh the evidence of mental functioning, substantial evidence supports the ALJ's conclusion that plaintiff's mental impairments were non-severe. Moreover, while the RFC does not include mental limitations, the ALJ relied on vocational expert (VE) testimony that plaintiff could perform "sedentary unskilled occupations" such as order clerk, call-out operator, and document preparer. AT 1075. Unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Plaintiff, who was a high school science teacher and occasionally worked as a substitute teacher in 2016 and 2017 (AT 1065, 1069), has not pointed to evidence showing that she could not perform unskilled work due to mental limitations. Plaintiff has not shown harmful error on this basis.

D. <u>Subjective Symptom Testimony</u>

Lastly, plaintiff argues that the ALJ erred in discounting her statements because he did not explain why specific evidence undermined her testimony, as required. Defendant counters that the ALJ's credibility discussion met the legal standard.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert, 980 F.3d at 1277–78. This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78.

Here, the ALJ summarized plaintiff's testimony at her February 2019 and May 2023 hearings. AT 1069. In 2019, she testified to chronic pain and fatigue, said she could not sit for long periods without moving around, and said that she could not lift more than ten pounds. AT

1069.  In 2023, she stated that she had difficulty sitting and standing for long periods without moving around; that she needed to lie down at times; and that she had days where she did not feel well enough to do things.  AT 1069-1070.

The ALJ found that "[t]he allegations of continuing disability are inconsistent with the treatment the claimant has sought and with the objective findings."  AT 1070.  He reviewed the objective medical evidence from 2016 to 2023 (AT 1070-1072), which alone would not have been enough to discount her credibility under the above standard.

However, the ALJ then explained why specific evidence undercut her alleged continuing disability, i.e., "her activities demonstrate considerable improvement in her functionality since" the comparison point decision on November 25, 2013.  AT 1072.  He noted plaintiff's ability to travel, hike, walk, act as a caretaker for her aging father and two children, and care for a preschool grandson all day from 2018 to 2022.  AT 1072.  The ALJ further explained that "[m]edical opinions in the record show the claimant has considerable work-related abilities despite her impairments," noting that three of the opining doctors concluded that she could perform light work.  AT 1072-1073.  "In sum," the ALJ wrote,

> the routine treatment modalities consisting [of] occasional use of Tylenol and ibuprofen and stretching regimes with few changes[,] along with the limited objective findings[,] persuade me that the claimant's allegations of daily severe symptoms and significant limitations are inconsistent with the medical evidence of record overall.  The limit to sedentary exertional work adequately accommodates her statements that she cannot lift over 10 pounds.  The standing and walking limitations address her complaints of limited ability to stand or walk for prolonged periods.  Her complaints about pain with sitting are accommodated with . . . a sit/stand option at the workstation.  Her allegations of need for breaks and rest periods are not supported by examination findings, laboratory data, or the treatment she has sought, or by her ability to supervise a young child consistently for 4 years between 2018 and 2022.

AT 1073.

As this makes clear, the ALJ partially credited plaintiff's subjective testimony and factored it into the RFC.  For those portions of her testimony the ALJ did not credit, he adequately explained why not, citing specific record evidence including multiple medical opinions.  As plaintiff has not shown error on this basis, defendant is entitled to summary

judgment.

CONCLUSION

IT IS HEREBY ORDERED that the Clerk of Court assign a district judge to this action.

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT:

1. Plaintiff's motion for summary judgment (ECF No. 7) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 9) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 4, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/rudo2765.ssi.ckd

11